BARFIELD, Judge, concurs.
The Florida Legislature has provided “catastrophic loss” benefits, in the form of additional temporary total disability benefits for a period of time appropriate to the individual claimant’s circumstances (but not extending beyond six months from the date of injury) only to those persons who suffer the loss of a hand, foot, arm, or leg due to amputation, or the total loss of use of such a member which is caused by organic damage to the nervous system, and only until the claimant has completed training in the use of an artificial member or appliance, as necessary, and has completed training or rehabilitation under a rehabilitative program pursuant to section 440.49, if provided.
Amputation results in the permanent and total loss of the member; damaged nerves do not usually regenerate, so that loss of use of a member caused by such nerve damage can also be considered permanent. Section 440.15(2) contemplates that a person who suffers such a severe permanent loss will of necessity have to undergo retraining in order to face the future in his impaired condition. This perceived special need for training in the use of a prosthesis or other equipment and for other rehabilitation services may have prompted the passage of the “catastrophic loss” provision. The resultant disability in a catastrophic loss case invokes the disability provisions of 42 U.S.C. § 423. This federal benefit and its attendant six month delay after injury further coincides with the time provision of section 440.15(2).
Notwithstanding language in some of this court’s earlier opinions which might be interpreted to indicate a contrary conclusion,[1] it is not logical to interpret the statute to indicate an intent by the legislature to compensate as a “catastrophic loss” the temporary inability of a claimant to use his limb (the case in most injuries) if there is some neural involvement, but to deny such added benefits to a claimant who is rendered unable to use his limb, either per *762 manently or during the recovery period, no matter how severe his injury, merely because there was no neural involvement.
Moreover, a plain reading of the statute indicates that the loss described in section 440.15(2)(b) does not automatically result in entitlement to the catastrophic loss benefit. The statute contemplates a training period in the use of an artificial member or device, and/or a rehabilitation program set up under section 440.49, and limits the payment of catastrophic loss benefits to the period of this training or rehabilitation. These are finite concepts which would not support a proposition that catastrophic loss benefits are payable even where the claimant undergoes no such training or rehabilitation on the theory that the loss defined by the statute “infers” such concomitant training or rehabilitation.
I would therefore reverse the award of catastrophic loss benefits because the record evidence does not support a finding that the claimant underwent any of the requisite training or rehabilitation, or that the loss in this case had any of the permanency characteristics suggested by the language of the statute.

. L.G.H. Construction Company v. Gonzalez, 466 So.2d 401 (Fla. 1st DCA 1985); Seminole County Board of County Commissioners v. Chaplin, 460 So.2d 544 (Fla. 1st DCA 1984); Atlantic Plastering, Inc. v. O'Hara, 454 So.2d 743 (1st DCA 1984); Hernandez v. Equipment Company of America, Adjusto, Inc., 452 So.2d 85 (1st DCA 1984); Marriott In-Flite Services v. Garcia, 450 So.2d 569 (1st DCA 1984); E.B. Malone Corporation v. Johnson, 425 So.2d 622 (1st DCA 1983); Santiago v. Orr Industries, Inc., 407 So.2d 1026 (Fla. 1st DCA 1981); Van Eyk v. R.N. Hicks Construction Company, 377 So.2d 793 (Fla. 1st DCA 1979). The holding in each of these cases may be justified by the particular facts of the case or by determinations not specifically made in the opinion. This court is not bound in its determination of this appeal by what appears to be obiter dicta in the last paragraph of the opinion in Marriott In-Flite Services (the facts recited in the opinion indicate that the claimant’s condition was not improved by the surgery).
It should be noted, although it does not affect the decision in this case, that the 1987 Florida Legislature amended section 440.15(2)(b):
Notwithstanding the provisions of paragraph (a), an employee who has sustained the loss of an arm, leg, hand, or foot, or within a reasonable medical certainty the anticipated permanent and total loss of use of such member because of organic damage to the nervous system ...
Ch. 87-330, Laws of Florida (underlined words added by amendment).